CHARLES STEWART DAVISON and Another, etc., Plaintiffs, *v.* PARKE, AUSTIN & LIPSCOMB, INC., and Others, Defendants.

Supreme Court, Special Term, New York County, November 23, 1937.

*Charles Stewart Davison* and *Frank C. Mebane, Jr.* [*Frank C. Mebane, Jr.*, of counsel], for the plaintiffs.

*Brodek & Eisner* [*Louis P. Eisner* of counsel], for the defendants.

PECORA, J. Plaintiffs, as owners of certain shares of preferred stock of Parke, Austin & Lipscomb, Inc. (herein called the corporation), sue in a representative stockholders' action to invalidate the action of the corporation in filing a certificate of reclassification and reduction of the capital stock thereof. The answer sets forth three separate defenses. A motion is now made by plaintiffs, under rule 109 of the Rules of Civil Practice, to strike out such defenses as insufficient in law, and under rule 112 for judgment on the pleadings.

Assuming the truth of the matters alleged in the answer and contained in the admissions in the pleadings, the plaintiff Thompson became a stockholder of the corporation on December 28, 1927, and is now the owner of 100 shares of its convertible participating preferred stock; and the plaintiff Davison became the owner of 228 shares of such stock at the same time, and now holds 150 shares. As appears from the certificate of reorganization of the corportion, filed November 15, 1927, the preferred stock carried with it certain preferences and privileges, e. g., dividends were to be cumulative, provision was made for a sinking fund to redeem the stock at $30 per share plus dividends, etc. By such amended certificate of November 15, 1927, there was authorized a capitalization of 110,000 shares of no par value, consisting of 30,000 shares of cumulative preferred stock and 80,000 shares of common stock.

On October 28, 1935, a notice of a special meeting of stockholders of the corporation to be held on November 14, 1935, was sent out to the stockholders. The meeting was called to consider and act upon a proposal to reduce the authorized capital stock from 110,000 shares to 80,000; to reclassify such shares as common shares without par value; to provide that " each share of preferred stock now outstanding shall be exchanged for one share and one-half share of the new common stock; * * * so that the preferred stock dividends accumulated and sinking fund accumulations will be eliminated." With such notice there was mailed a statement, signed by the president of the corporation, giving the reasons for the proposed reduction and reclassification.

The special meeting was held on November 14, 1935, and it will be assumed that the requisite number of stockholders were present and voted to approve those proposals. Pursuant to action taken at that meeting, a certificate of reclassification was filed December 2, 1935.

On December 14, 1936, a dividend on the newly-created common stock of twenty-five cents per share was declared. This dividend was paid on December 24, 1936, after notification by plaintiffs that the corporation and its directors " would be held responsible if the same were proceeded with."

The plaintiffs contend that the corporation failed to give adequate notice of that special meeting of November 14, 1935, and that consequently the action taken then is null and void and must be invalidated. The three separate defenses of the answer may be summarized as follows: (1) That the defendants duly complied with the provisions of section 36 of the Stock Corporation Law; (2) that having duly complied with section 36 of the Stock Corporation Law, the plaintiffs were relegated to their sole remedies under

section 21 of the Stock Corporation Law to have their stock appraised; that the time to act under section 21 had elapsed and that the plaintiffs have, therefore, "legally consented" to the reclassification and reduction; and (3) that the plaintiffs have been guilty of laches.

Section 36 of the Stock Corporation Law deals with "changes in respect to shares, capital stock or capital." By its provisions a corporation is empowered to increase or reduce its capital stock and to classify or reclassify its shares. Section 35 of the Stock Corporation Law provides for the filing of a certificate of increase, reduction, reclassification, etc., and section 37 of the Stock Corporation Law prescribes the steps to be taken to effectuate a reduction and reclassification. Paragraphs (c) and (d) of subdivision 3 of section 37 provide that "if such certificate alters the preferences of outstanding shares of any class" the affidavit of the officer subscribing and acknowledging the certificate must show (c) that the corporation was authorized to execute and file the certificate by the votes "of the holders of record of two-thirds of the outstanding shares of each such class entitled to vote thereon;" and (d) that "such votes were cast at a stockholders' meeting held on a date specified, upon notice pursuant to section forty-five of the Stock Corporation Law."

Section 45 of the Stock Corporation Law provides for "Notice of meetings of stockholders." The pertinent provision is: "Such notice shall state the purpose or purposes for which the meeting is called and the time when and the place within the State where it is to be held, and a copy thereof shall be served, either personally or by mail, upon each stockholder of record entitled to vote at such meeting, and to any stockholder who, by reason of any action proposed at such meeting, would be entitled to have his stock appraised if such action were taken, *not less than ten nor more than forty days before the meeting.*" (Italics mine.)

Subdivision 12 of section 38 of the Stock Corporation Law provides the remedy for non-consenting stockholders to have their stock appraised pursuant to section 21 of the Stock Corporation Law.

It is not disputed that a twelve-day notice of the special meeting was given to stockholders. In that respect there was compliance with the provisions of section 45 of the Stock Corporation Law. However, in the instant case, the amended certificate of incorporation, filed November 15, 1927, and the preferred stock issued pursuant thereto contained the following provision for notice: "At least *thirty (30) days* prior to any reorganization of the corporation, or reclassification of its capital stock * * * the cor-

poration will mail notice thereof to each of the holders of the preferred stock at their respective addresses as the same shall appear on the books of the corporation."

This requirement of notice differs from that of the statute and supplants it. Parties may by contract stipulate for a definite notice, and such agreements will be enforced unless they violate a statutory mandate or a rule of public policy. There is nothing about a requirement of a thirty-day notice which is repugnant to any rule of public policy. Indeed, it fails within the time limits of notice provided for by section 45 of the Stock Corporation Law.

The language of the amended certificate of 1927 is ambiguous to the extent that it may be interpreted as thirty days' notice of meeting or thirty days' notice of filing of the certificate of reclassification. Yet either construction here would result in the same decision. Parenthetically, it may be said that the fair intendment of the language leads to the conclusion that notice of meeting was contemplated, so that the persons affected would be enabled to take proper action to defeat the proposal.

In *Matter of Keller* (116 App. Div. 58) the provisions of the by-laws required, in addition to statutory notice, a written notice mailed thirty days before the meeting for the election of directors. It was there held that a notice of twelve days, which would have been sufficient under the statute in question, was insufficient by reason of the by-law requirement. The reasoning of the court is applicable here. It said (p. 60): " It is no answer to say that the result will be the same upon another election. The length of the notice required by the by-laws may have been for the very purpose of allowing a stockholder to convince his fellow-stockholders of the desirability of the election of the directors whom he favors, or perchance of negotiating for the purchase of their stock that he may vote upon it for those whom he desires to act as directors. The failure to give the notice required by the by-laws is a substantial omission which should not be disregarded unless upon clear waiver by the stockholder." (See, also, *Matter of Empire State Supreme Lodge*, 53 Misc. 344; affd., 118 App. Div. 616.)

The reclassification attempted here destroyed important contractual rights of the preferred stockholders. Without statutory sanction the corporation would be powerless to act. (*Breslav v. New York & Queens Electric Light & Power Co.*, 249 App. Div. 181; affd., 273 N. Y. 593.) In fact, the *Breslav* case raises doubts as to the extent to which contract rights of stockholders can be abrogated under the guise of " reclassification." Had the provision for notice been properly followed, the reduction and reclassifi-

cation attempted here might have been valid. (*Matter of Silberkraus*, 250 N. Y. 242; *Harr* v. *Pioneer Mechanical Corp.*, 65 F. [2d] 332; *Matter of Duer*, 270 N. Y. 343; *Goebbel* v. *Gross*, 151 Misc. 512.) This question, however, need not now be decided here, because it is clear that the failure to comply with the provisions for notice invalidated the proposed reclassification. (*Danzig* v. *Lacks*, 235 App. Div. 189; *Matter of Kaminsky*, 251 id. 132; *Matter of Keller, supra.*)

Were the provision of the amended certificate of incorporation of November, 1927, to be construed as requiring thirty days' notice only of the filing of the certificate of reclassification, the facts here clearly show that no other notice than that of October 28, 1935, was sent. Such notice cannot be construed as notice of reclassification, since it merely advised of a meeting, to be held twelve days hence, at which action was to be taken, but at which the proposal for such reclassification might not have been approved. The first and second separate defenses are, therefore, insufficient and are stricken out.

Since the first two separate defenses fall, the third defense of laches, or estoppel, will have to be repleaded, and the facts upon which that defense is based set forth anew. The third separate defense is also stricken out, with leave to serve an amended answer within ten days after the service of a copy of the order to be entered herein, with notice of entry, on the attorneys for the defendants. The motion for judgment on the pleadings is denied. Settle order.